IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAI,<br><br>    Plaintiff,<br><br>  v.<br><br>FISHI CAFÉ, INC, et al.,<br><br>    Defendants.<br>_____/ | No. C-05-03175 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On August 4, 2005, Plaintiff Yun-Gui Cai filed this action against Defendants Fishi Café, AA Café, Great China Realty Investment, Lily Liu, Yen Cheng Lin and Yin Tsai Lin, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and of California labor laws relating to overtime and meal and rest period pay. Defendants AA Café, Lily Liu, Yen Cheng Lin and Great China Realty Investment seek summary judgment on all claims against all Defendants except for the FLSA claim against Defendant Lily Liu.[1] This motion was fully briefed and the Court held a hearing on September 11, 2007.[2]

---

[1] There is no return of service on the docket for Defendants Fishi Café and Yin Tsai Lin and they have not answered the complaint, but they were represented by counsel during the initial phase of this case and did participate in this case through early 2006. All parties, including Fishi Café and Yin Tsai Lin, have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

[2] Defendants filed objections to Plaintiff's evidence, including a request to disregard the entire opposition and counsel declaration because they were filed seventeen hours after the deadline. Plaintiff did not respond to this objection. Although the opposition and declaration were filed one day late without an explanation, the Court declines to strike them for that reason, particularly since Defendants have shown no prejudice as a result of the late filing. Defendants' objection on this ground is overruled. Defendants also objected to Exhibits 9 and 11 to Mr. Wang's declaration. Those exhibits are the Notice of Claim brought by former employees Roger Lee and Han Chuan Liang against Defendants and the settlement agreement of Roger Lee's claims. These exhibits are irrelevant and the settlement agreement contains a confidentiality clause barring disclosure of its terms. Accordingly, Defendants' objections to Exhibits 9 and 11 are sustained.

**FACTS**[3]

Plaintiff, who does not speak or understand English (see O'Grady Decl. Ex. A (Cai deposition) at 11:17-22), was hired as a chef making Taiwanese snacks at a food court restaurant known to him as Little Taipei or Hoi Chung Ten. See O'Grady Decl. Ex. A at 16:11-14; 21:11-15.[4] The restaurant was actually named Yang-Kee Café, which became Fishi Café in January 2004 and then became AA Café around January 2006. See Lin Decl. at ¶¶ 6, 9. Plaintiff worked at the restaurant from August 7, 2001 to October 2004, and so never worked for the entity known as AA Café. See O'Grady Decl. Ex. A at 22:14-25.

Plaintiff never looked at the business names on his paychecks (see O'Grady Decl. Ex. A at 14:19-23), and only knew that he worked at the same place for three years. See id. at 16:3-5, 11-16. He had never heard of AA Café. See id. at 16:6-8. He had also never heard of Defendant Great China Realty Corporation. See id. at 16:22-24. In fact, he did not know anything about the businesses that he worked for other than he went to work and received a check. See id. at 17:20-20:24.

When Plaintiff worked for Yang-Kee Café, his work was supervised on a daily basis by Au Leung or Au Xing, the head chef. See O'Grady Decl. Ex. A at 23:14-24:4. According to Plaintiff, Lily Liu, the wife of the boss, had the authority to hire and fire employees, to create the work schedule and to decide how much employees were to be paid. See id. at 24:5-24. According to Plaintiff, Ms. Liu came to the restaurant once or twice a week or not at all. See id. at 28:24-29:5. He did not know whether Ms. Liu was responsible for the day-to-day operations of Yang-Kee. See

---

[3] Defendants object to several paragraphs of Plaintiff's declaration as a sham affidavit. See Wang Decl. Ex. 1. To the extent that the declaration directly conflicts with Plaintiff's deposition testimony, the Court will not consider it. See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) ("Under our 'sham' affidavit rule, 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.' [citation omitted]."); Pacific Ins. Co. v. Kent, 120 F. Supp. 2d 1205, 1213 (C.D. Cal. 2000).

[4] On September 4, 2007, Defendants submitted further objections to Plaintiff's declaration and the Guo declaration on the ground that they are translated from Chinese with no sworn statement authenticating the translation. See Jack v. Trans World Airlines, 854 F. Supp. 654 (N.D. Cal. 1994) ("Witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator."). On September 6, 2007, Plaintiff cured this deficiency by filing a sworn statement stating that the translations accurately reflected the Chinese originals.

id. at 29:6-9.

Plaintiff also did not know who had the power to hire and fire employees or reprimand employees at the subsequent entity known as Fishi Café. See O'Grady Decl. Ex. A at 40:18-41:3. He did not know the name of Defendant Yen Cheng Lin, but said that the "younger brother" fired him without giving him a reason. See id. at 41:4-21; 66:23-67:20; Lin Decl. ¶ 8. Yen Cheng Lin is Lily Liu's brother. See Lin Decl. ¶ 5. Plaintiff testified that he was only suing Lily Liu and did not know the name of her brother. See id. at 95:13-20.

Plaintiff testified that he was entitled to one week of vacation, which he took and for which he was paid. See O'Grady Decl. Ex. A at 46:18-21. He never missed work for a doctor's appointment, and did not have to clock in or out or sign in or out for lunch or for the workday. See id. at 46:22-47:25. He was a salaried employee. See id. at 48:5-8. But at least one paycheck shows that he was paid hourly, as well as overtime. See id. at 62:21-63:14.

Plaintiff's monthly pay increased from $1,700 to $1,900 at some point. See O'Grady Decl. Ex. A at 66:2-4. He never had a written employment agreement. See id. at 68:24-69:25. When Plaintiff asked for a raise, he asked Yen Cheng Lin, who said that he would have to talk to Lily Liu about it. See id. at 9-22.

Plaintiff testified that Yen Cheng Lin came to the restaurant every day to collect the daily receipts. See O'Grady Decl. Ex. A at 68:2-7. Otherwise, Mr. Lin did not come to the restaurant. See id. at 68:13-17. Mr. Lin submitted a declaration saying that he worked full-time at Universal Paragon Corporation. See Lin Decl. ¶ 3. On weekends, as a favor to his sister, he would sporadically and without compensation visit Yang-Kee Café for periods of one-half to one hour to make sure it was running smoothly. See id. ¶ 5. His father managed operations at Fishi Café and as a favor to him, Mr. Lin would collect the daily receipts on most evenings at approximately 9:00 p.m. See id. ¶ 7. He would also occasionally go to Fishi Café on weekends to ensure that it was running smoothly. See id. ¶ 7. In January 2006, after Plaintiff's termination, Mr. Lin incorporated AA Café at the request of his father for a Taiwanese investor Chu Wang. See id. ¶ 9. For a few months after the incorporation, he was the President and Secretary of AA Café and he theoretically possessed the power over the finances of AA Café, the power to set work schedules, to hire and fire and to

maintain employment records, but he did not exercise those powers. See id. ¶ 11. He continued to collect daily receipts as he was able to given his work schedule. See id. His positions as President and Secretary of AA Café were given to Henry Ching at some point. See id. ¶ 12. As of February 2007, he collected receipts only once or twice per week, and then in May 2007, he stopped altogether. See id. ¶ 13.

A former employee of Fishi Café, Run-Sheng Guo, testified in a declaration that Mr. Lin hired him in May 2004 to work in the kitchen. See Wang Decl. Ex. 18 ¶¶ 2-3.[5] Mr. Lin informed Mr. Guo of the job duties and the pay, and told him to start the next day. See id. ¶ 3. According to Mr. Guo, who worked at the restaurant for one week, Mr. Lin came to the restaurant for about one hour. See id. ¶ 5. Mr. Guo never met Lily Liu. See id. ¶ 4. When Mr. Guo informed Mr. Lin that he was quitting his job at the restaurant, Mr. Lin told Mr. Guo that he would pay him cash for the week he worked. See id. ¶ 8.

**DISCUSSION**

**1.     Summary judgment is granted as to Great China Realty Investment.**

Defendants argue that summary judgment is proper as to the FLSA claims against Great China because Great China is not a joint employer, as to the California Labor Code claims because Great China had no control over Plaintiff's employment and as to the California Business & Professions Code § 17200 claim because violation of that section is dependent on violation of FLSA or the Labor Code. Great China is a property investment company that has never owned or operated Yang Kee Café, Fishi Café or AA Café. See Aaron Liu Decl. ¶¶ 3-4. Great China is the landlord of the restaurants. See id. ¶ 5. As the landlord, Great China had no control over the work of Plaintiff at any time. See id. ¶ 6.

---

[5] Defendants object to paragraphs 3, 6 and 9 of the Guo declaration as lacking foundation, irrelevant, and speculative. Defendants' objection that the declaration contains a translation error (substituting "hours" for "weeks" in paragraph 6) is overruled because the error has since been corrected by an errata. Paragraph 3 states that Mr. Guo was hired at the restaurant by a "mid-aged man" who he later learned was Mr. Lin. This statement contradicts Mr. Lin's testimony that he was not at the restaurant frequently, but that contradiction does not make paragraph 3 objectionable. The objection is overruled. Paragraph 6 addresses a "Mrs. Lin" who allegedly came to the restaurant more frequently than Mr. Lin. There is no Mrs. Lin as a Defendant here, so this statement as to her actions is irrelevant and the objection is sustained. Paragraph 9 states Mr. Guo's opinion that Mr. Lin was responsible for hiring, firing and paying employees. The declaration does not provide any foundation with respect to other employees, so that objection is sustained.

4

Plaintiff's opposition is silent as to any arguments against summary judgment for Great China. At the hearing, Plaintiff's counsel stated that he did not oppose summary judgment as to Great China. Therefore, Defendants' motion for summary judgment as to Great China is granted.

**2.    There is no triable issue of fact as to Plaintiff's claims under the California Labor Code against Yen Cheng Lin and Lily Liu.**

Plaintiff alleges that Yen Ching Lin and Lily Liu violated the overtime and meal and rest periods requirements of the California Labor Code. See Cal. Labor Code §§ 226.7, 510. Defendants argue that summary judgment is proper as to Plaintiff's Labor Code claims because Mr. Lin and Ms. Liu cannot be personally liable for wage claims and they are not the alter egos of the corporation.

Individual managers are not liable for wage claims under California law. See Reynolds v. Bement, 36 Cal.4th 1075, 1087-88 (2005) ("[C]orporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages."); see also Si v. CSM Investment Corp., 2007 WL 1518350 (N.D. Cal. 2007) (Trumbull, M.J.). Plaintiff does not dispute this point in his opposition. Rather, he argues that Mr. Lin and Ms. Liu are personally liable because they are the alter egos of the corporations.

Under California law, two conditions must be met before the alter ego doctrine can be invoked:

> First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.

Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538 (2000); see also SEC v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003) (applying California alter ego law); Firstmark Capital Corp. v. Hempel Financial Corp., 859 F.2d 92, 94 (9th Cir. 1988) (same). A court should consider the totality of the circumstances in determining whether the alter ego doctrine applies, but many factors are instructive:

> Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. [citations omitted]. Other factors which have been described in the case law include inadequate capitalization, disregard of corporate

formalities, lack of segregation of corporate records, and identical directors and officers. [citations omitted].

Sonora Diamond, 83 Cal.App.4th at 538-39.  Although no one factor is determinative, actual ownership is a "prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'"  SEC, 322 F.3d at 1128; Firstmark, 859 F.2d at 94 ("Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest.  If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her;" finding that wife's community property interest in husband's stock holdings was sufficient to meet the ownership prong of the alter ego test); see also Riddle v. Leuschner, 51 Cal.2d 574 (1959) (wife who owned one share of stock had sufficient ownership interest to be personally liable if rest of alter ego test satisfied; husband with no stock ownership had no unity of ownership and interest even though he participated in conduct from which the corporate misconduct arose).  "Ownership of stock, however, is merely a threshold question under California's alter ego doctrine.  After ownership is established, the proper analysis proceeds to determine whether 'the alter ego doctrine is otherwise applicable.'"  Firstmark, 859 F.2d at 94-95 (quoting Riddle, 51 Cal.2d at 580).

Here, the evidence is undisputed that Mr. Lin had no stock ownership in Yang Kee Café, Fishi Café or AA Café.  See Lin Decl. ¶¶ 4, 6, 9; see also Wang Decl. Ex. 5 at 11:1-9.[6]  The evidence is also undisputed that Ms. Liu had no stock ownership in Yang Kee Café.  See Liu Decl. ¶ 3.  There is no evidence in the record as to whether she had any stock ownership of Fishi Café or AA Café.  Therefore, the alter ego analysis as to Mr. Lin and Ms. Liu does not proceed to the second prong of the analysis or to any other question of alter ego liability.

Plaintiff argues that the ownership prong of the test can be established by showing that Mr. Lin and Ms. Liu are "equitable owners" of the businesses.  However, Plaintiff cites no authority for this argument and appears to confuse control with ownership.  No matter how much control there is, if there is no ownership of the company, under California law, there is no alter ego liability.  See Riddle, 51 Cal.2d 574.

---

[6] Defendants' objections to the Lin declaration are overruled.  Defendants object to Plaintiff's use of the evidence, not to the evidence itself.

6

Accordingly, Plaintiff has not met his burden of showing a triable issue of fact as to ownership, which is a threshold showing that must be made before the alter ego doctrine applies. Therefore, summary judgment is proper as to Plaintiff's Labor Code claims against Mr. Lin and Ms. Liu.

**3.       There is a triable issue of fact as to the FLSA claim against Mr. Lin.**

The FLSA provides for, *inter alia*, overtime compensation.  29 U.S.C. § 207.  Under the FLSA, "employer" is defined as: "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."  29 U.S.C § 203(d).  This definition is to be given an "expansive interpretation" to effectuate the FLSA's "broad remedial purposes."  Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983), disapproved of on other grounds, Garcia v. San Antonio Metropolitan Transit Authority, 105 S. Ct. 1005 (1985).  The determination of whether an employer-employee relationship exists does not depend on "'isolated factors but rather upon the circumstances of the whole activity.'"  Bonnette, 704 F.2d at 1469 (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).  "The touchstone is 'economic reality.'"  Bonnette, 704 F.2d at 1469 (quoting Goldberg v, Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961)).  Four factors are useful in making the determination of whether someone is an employer:

> (1) the power to hire and fire employees; (2) supervise and control employee work schedules or conditions of employment; (3) determine the rate and method of payment; and (4) maintain employment records.

See Bonnette, 704 F.2d at 1470; Lambert v. Ackerly, 180 F.3d 997, 1012 (9th Cir. 1999) ("Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act and is subject to liability.") (quoting Bonnette, 704 F.2d at 1470).

In Bonnette, the Court held that the social services agencies were employers of chore workers providing domestic in-home services to disabled public assistance recipients.  Important to that decision was that the agencies controlled the rate and method of payment, maintained employment records, exercised control over structure and conditions of employment and had substantial control by virtue of their power of the "purse strings."  In Baird v. Kessler, 172 F. Supp.

7

2d 1305, 1311 (E.D. Cal. 2001), the district court found that defendants California Department of Corrections and other managers and supervisors were not employers, even though they had some control over the employment relationship, because:

> considering the economic reality of the circumstances here, a crucial aspect of control is missing. Despite their varying degrees of participation in the day-to-day work environment of these plaintiffs, none of these defendants 'control the purse strings' that support plaintiffs' jobs.

Baird, 172 F. Supp. 2d at 1311 (quoting Bonnette, 704 F.2d at 1470). The Baird court also stated:

> Congress could not have intended to hold individuals personally liable for alleged violations of the FLSA when those individuals cannot even control crucial aspects of the work environment such as when and if paychecks will issue, how many employees are necessary, and whether or not more employees can be hired.

Baird, 172 F. Supp. 2d at 1312 ("The court does not believe that Congress intended to make each individual manager and officer within a business, public or private, personally liable for violations of the FLSA, when a manager or officer cannot control the very things which may lead to violations of the FLSA [hiring freeze by State and delay in issuance by State of paychecks].").

Here, examining the evidence in the light most favorable to Plaintiff, there is, albeit just barely, a triable issue of fact as to whether Mr. Lin was an employer for purposes of the FLSA. Mr. Lin testified in his declaration that he did not have power over the monies of Yang Kee Café or Fishi Café, the two entities for which Plaintiff worked, but there is evidence that he collected the daily receipts for an extended period. See Lin Decl. ¶¶ 4, 6, 7, 10, 11. Mr. Lin testified that he looked in on the restaurant for short periods to make sure it was running smoothly and that if he saw a puddle on the floor at the restaurant, he would ask an employee to clean it up. See Wang Decl. Ex. 5 at 99:9-19. There is no evidence that Mr. Lin signed paychecks or rent checks, but Mr. Guo testified that Mr. Lin hired him and told him how much he would be paid, and that Mr. Lin told him that he would pay him his wages upon separation. See Guo Decl. ¶ 3. Plaintiff testified that when he asked Mr. Lin for a raise, Mr. Lin did not want to give him one (even though according to Plaintiff he had the power to do so), but instead made the excuse that he had to ask Lily Liu. See Wang Decl. Ex. 1

1 ¶ 10.[7] Mr. Lin testified that he did not have the power to set work schedules (see Lin Decl. ¶¶ 4, 6), but Mr. Guo testified in his declaration that Mr. Lin told Mr. Guo when to come in to work. See Wang Decl. Ex. 18 at ¶ 3. Mr. Lin personally terminated Plaintiff, although Mr. Lin stated in his declaration that he did so at the direction of his father and that he had no independent authority to terminate employees. See Lin Decl. ¶ 8. Mr. Guo testified that Mr. Lin hired him and set his pay and paid him on his terminating his employment. See Guo Decl. ¶ 3. Plaintiff also testified that Mr. Lin told Plaintiff when he terminated him that he would give him two extra days' pay. See O'Grady Decl. Ex. A at 92:17-19. Plaintiff testified in his declaration that Mr. Lin offered to pay him accrued vacation time as a settlement of this lawsuit. Accordingly, while the question of a triable issue of fact against Mr. Lin based on the FLSA is a close one and Plaintiff may well lack sufficient evidence at trial, there is some evidence which, taken in the light most favorable to Plaintiff, raises an inference of at least some control over the monies of the restaurants and hiring and firing. See Wang Decl. Ex. 1 at ¶ 11. Accordingly, summary judgment as to Plaintiff's FLSA claim against Mr. Lin is denied.

**4.    There is a triable issue of fact as to Plaintiff's California Business and Professions Code § 17200 claims against Mr. Lin and Ms. Liu.**

Defendants seek summary judgment on Plaintiff's California Business and Professions Code § 17200 claims based on Defendants' failure to pay overtime and vacation pay. Plaintiff's opposition is silent as to Defendants' motion on these claims.

Section 17200 allows recovery for "any unlawful, unfair or fraudulent business act or practice . . . ." An action based on this state statute "borrows" violations of other laws when committed pursuant to business activity. See Harris v. Investor's Business Daily, Inc., 138 Cal.App.4th 28, 32-33 (2006); State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1102-1103 (1996), abrogated on other grounds by, Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 (1999) ("Virtually any law-federal, state or local-can serve as a predicate for a section 17200 action."). Here, because there is a triable issue of

---

[7] Although Plaintiff, a non-English speaker and cook who is apparently unsophisticated in the details of court proceedings, did not understand that he was suing Mr. Lin, Plaintiff testified as to Mr. Lin's role with respect to Plaintiff's employment and termination.

9

1 fact as to Mr. Lin's liability under FLSA and Defendants did not seek summary judgment as to the
2 FLSA claim against Ms. Liu, Plaintiff's § 17200 claim against those Defendants based on FLSA
3 survives summary judgment.

**CONCLUSION**

Defendants' motion for summary judgment is granted as to Great China Realty Investment and as to the California Labor Code claims against Mr. Lin and Ms. Liu. The motion is denied as to the FLSA claim against Mr. Lin and the California Business and Professions Code claims against Mr. Lin and Ms. Liu based on the FLSA.

**IT IS SO ORDERED.**

Dated: September 20, 2007

ELIZABETH D. LAPORTE
United States Magistrate Judge